IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LTD. | § | |
| | § | |
| v. | § | CASE NO. 2:23-cv-00206-JRG |
| | § | (Lead Case) |
| FORTINET, INC. | § | |

| | | |
|---|---|---|
| LIONRA TECHNOLOGIES LTD. | § | |
| | § | |
| v. | § | CASE NO. 2:23-cv-00207-JRG |
| | § | (Member Case) |
| CISCO SYSTEMS, INC. | § | |

**ORDER**

Before the Court is the parties' Joint Stipulation of Non-Infringement of U.S. Patent No. 7,623,518 (Dkt. No. 55) (the "Stipulation"). In the Stipulation, the parties agree and stipulate to the following facts:

1. Lionra has asserted infringement of claims 15, 17, and 19–21 of the '518 patent (the "Asserted Claims") by Fortinet's "Accused Products" or "Accused Instrumentalities" (collectively, the "Accused Products").[1] Each of the Accused Products includes a processor made by Intel Corporation ("Intel Processor") or Advanced Micro Devices, Inc. ("AMD").

---

[1] Lionra and Fortinet agree that for purposes of this stipulation, Lionra will discontinue assertion of method claims 1 and 3 without prejudice to reassert the claims should the District Court's determinations be reversed.

2. Lionra is a signatory of a Patent License Agreement with RPX Corporation (the "RPX Agreement"), attached hereto as Exhibit 1. The RPX Agreement is a valid and enforceable contract.

3. The RPX Agreement provides an "exclusive and irrevocable right of RPX to grant to each Initial Licensee: (i) sublicenses under the Patent License, as well as (ii) an irrevocable, unconditional release from all Claims relating to any Patent including those for damages for past, present and future infringement of the Patents." Ex. 1 at § 1.2(a).

4. The RPX Agreement further defines a "Licensed Product and Service" as follows:

> **"Licensed Product and Service"** shall mean any past, present or future product (including but not limited to integrated circuits, components, systems, devices, software, firmware, IP blocks, cores, cells or macros), service, software, technology, design, or material, hardware, systems, apparatuses, devices, components, methods, websites, and processes (including any components, devices, data, media, or any other portions thereof), at any time, made, have made, used, purchased, provided, hosted, sold, leased, licensed, distributed, transmitted, exported, imported or offered for sale, lease, import, or otherwise disposed of or exploited by or on behalf of an RPX Licensee or an RPX Licensee Affiliate, alone or in combination with other products, software, technology, materials and services, the manufacture, use, purchase, provision, hosting, sale, lease, license, distribution, transmittal, export, import (or offer for sale, lease or import) of which would result in infringement (direct, indirect, or otherwise) of one or more Patents, irrespective of whether the product, service, software, technology, or material, hardware, systems, apparatuses, devices, components, methods, websites, and processes (including any components, devices, data, media, or any other portions thereof) were or had been made, used, purchased, provided, hosted, sold, leased, licensed, distributed, transmitted, exported, imported or offered for sale, lease, or import in the United States. Licensed Product and Service will include any Combined Licensed Product and Service.

*Id.* at 2-3.

5. The Patent License Agreement further defines "Combined Licensed Product and Service" as follows:

> **"Combined Licensed Product and Service"** shall mean any past, present or future combination or use, whether by an RPX Licensee, any RPX Licensee Affiliate, or any Covered Third Party, of a Licensed Product and Service with any other product,

service, technology, or material, only if: (i) a portion of such Licensed Product and Service provided by or on behalf of the RPX Licensee or any RPX Licensee Affiliate satisfies (or is alleged by Licensor or its Affiliates to satisfy), one or more material elements or steps of a claim in any Patent, or (ii) the RPX Licensee or any RPX Licensee Affiliate has a legal or contractual obligation (existing on or after the Effective Date of this Agreement) to indemnify a third party with respect to the Licensed Product and Service in the combination such that the RPX Licensee or any RPX Licensee Affiliate would be subject to a claim for indemnification in the event that the combination is alleged to infringe or practice any element of any claim in any Patent (provided that any contractual obligation to indemnify (a) is not frivolous and not for the primary purpose of obtaining rights under this Agreement, and (b) arising after the Effective Date will only cover acts or activities occurring on or after the date of such contractual obligation).

*Id.* at 1-2.

6. The RPX Agreement contains a covenant not to sue, providing:

[A]s of and following the Closing, neither Licensor nor any of its Affiliates will Assert any Patent (or instruct, encourage, or aid a third party to Assert any Patent) against any RPX Licensee or any RPX Licensee Affiliate, and neither Licensor nor its Affiliates will Assert any Patent (or instruct, encourage, or aid a third party to Assert any Patent) against any Covered Third Party with respect to any Licensed Product and Service or Combined Licensed Product and Service. As of and following the Closing, neither Licensor nor any of its Affiliates will Assert or allege that any product, software, technology, material and/or service of any RPX Licensee or any RPX Licensee Affiliate satisfies an element or step of a claim in any Patent against any Entity.

*Id.* at § 3(d).

7. The RPX Agreement defines "Initial Licensee" as follows:

**"Initial Licensee"** shall mean each Entity identified in Exhibit A, together with each such Entity's past, present and future Affiliates and any portion of its business or assets (including any Affiliate) that any of the foregoing may sell, transfer or divest (subject to Section 1.3).

*Id.* at 2.

8. Intel and AMD are enumerated "Initial Licensees." RPX Agreement, Exhibit

A at 2. Fortinet, as a "Covered Third Party," can enforce Lionra's obligations under the RPX

Agreement at least pursuant to Section 1.2(c). *Id.* at § 1.2(c). Claim 15 of the '518 patent requires, in part, "a processor coupled to the forwarding circuit and to the memory circuit, the processor operable to define the specific packets detected by the forwarding circuit and operable to process the specific packets stored in the memory circuit using the enhanced access control list to generate the dynamic access control list and store the dynamic access control list in the memory circuit, and further operable to provide the specific packets to the processor port of the forwarding circuit after processing the packets." For all Accused Products, Lionra's only infringement accusation for this limitation is that an Intel Processor is alleged to satisfy the claimed "processor" limitation. Thus, Lionra's accusations indicate that an Intel or AMD Processor is a "material element[]" within the contemplated scope of the RPX Agreement for "Licensed Product[s] and Service[s]." Claim 17 of the '518 patent depends on claim 15, and therefore includes the same "processor" limitation. For all Accused Products, Lionra's only infringement accusation for this limitation is that an Intel or AMD Processor is alleged to satisfy the claimed "processor" limitation.

9. Claim 19 of the '518 patent requires, in part, "a processor coupled to the forwarding circuit and to the memory circuit, the processor operable to define the specific packets detected by the forwarding circuit and operable to process the specific packets stored in the memory circuit using the enhanced access control list to generate the dynamic access control list and store the dynamic access control list in the memory circuit, and further operable to provide the specific packets to the processor port of the forwarding circuit after processing the packets." For all Accused Products, Lionra's only infringement accusation for this limitation is that an Intel or AMD Processor is alleged to satisfy the claimed "processor" limitation.

10. Claim 20 of the '518 patent depends on claim 19, and therefore includes the same

"processor" limitation. For all Accused Products, Lionra's only infringement accusation for this limitation is that an Intel or AMD Processor is alleged to satisfy the claimed "processor" limitation.

11. Claim 21 of the '518 patent depends on claim 19, and therefore includes the same "processor" limitation. For all Accused Products, Lionra's only infringement accusation for this limitation is that an Intel or AMDProcessor is alleged to satisfy the claimed "processor" limitation.

12. Fortinet maintains that Lionra's assertion of infringement of the Asserted Claims in this case is contrary to the license and covenant not to sue under the RPX Agreement. Lionra disputes that. The parties' contentions on this dispute are fully set forth at Dkts. 264, 300, 333, 374, and 507 in *Lionra Technologies Ltd. v. Fortinet, Inc. et al.*, No. 2:22-cv-00322-JRG-RSP (E.D. Tex.) ("*Lionra I*").

13. The Court decided in *Lionra I* that certain Fortinet products are "Licensed Product[s] and Service[s]" and "Combined Licensed Product[s] and Service[s]" under the RPX Agreement as to U.S. Patent No. 7,685,436 and U.S. Patent No. 8,566,612, by virtue of their including Intel or AMD Processors as a "material element" of the asserted claims. *Lionra I*, Dkt. 479 at 6–7 (Report and Recommendation); *Lionra I*, Dkt. 515 (Order Adopting Report and Recommendation).

14. The Court also decided in *Lionra I* that, under the covenant not to sue in the RPX Agreement, Lionra is barred from asserting a theory of infringement that identifies an Intel or AMD processor "as the requisite hardware that is claimed" in the relevant asserted claims. *Lionra I*, Dkt. 479 at 6–7 (Report and Recommendation); *Lionra I*, Dkt. 515 (Order Adopting Report and Recommendation).

15. The parties stipulate that the Court's reasoning in *Lionra I* applies equally to the Asserted Claims and Accused Products in this case. Accordingly, the parties stipulate that, under

the Court's reasoning in *Lionra I*, Fortinet's Accused Products are licensed under the RPX Agreement for the reasons stated above.

16. The parties further stipulate that, under the Court's reasoning in *Lionra I*, Lionra has covenanted not to sue any entity, including Fortinet, for alleged infringement based on any allegations against Intel processors.

17. Accordingly, the parties stipulate that, under the Court's reasoning in *Lionra I*, Fortinet is entitled to judgment of noninfringement in this case, subject to Lionra's right to appeal the judgment based on the Court's reasoning in *Lionra I*, Dkt. 515.

18. For the avoidance of doubt, the parties' briefing regarding the motion for summary judgment in *Lionra I* (Dkts. 264, 300, 333, 374, 507) and this Court's decisions on that motion (Dkts. 479, 515) are attached hereto and will be considered part of the record of this case for purposes of any appeal. *See* Exs. 2-8.

Having considered the Stipulation, and noting its joint nature, the Court **ACKNOWLEDGES AND ACCEPTS** the Stipulation. Accordingly, the Court hereby **ORDERS** and **ENTERS** a judgment of non-infringement as to U.S. Patent No. 7,623,518 ("the '518 patent").

**So ORDERED and SIGNED this 19th day of July, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE